# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**IKECHUKWU HYGINUS OKORIE, M.D.**                                                 **PLAINTIFF**

**V.**                                         **CAUSE NO. 3:17-CV-537-CWR-FKB**

**VIRGINIA M. CRAWFORD, M.D., ET AL.**                                      **DEFENDANTS**

## ORDER

Before the Court are Plaintiff Dr. Ikechukwu Okorie's Motion for Preliminary Injunction and Temporary Restraining Order, Docket No. 9, and Defendants' Motion to Dismiss, Docket No. 27. After considering the motions, evidence, and applicable law, the Court denies Plaintiff's Motion and grants Defendants' Motion.

### I. Factual and Procedural History

Dr. Okorie operates a primary care practice out of his Hattiesburg clinic, the Inland Family Practice Center ("Inland"). In 2007, the Mississippi State Board of Medical Licensure ("Board") first issued Dr. Okorie a certificate to prescribe opioids and other pain medications to patients.

On October 28, 2010, Board investigators and a Drug Enforcement Agency ("DEA") officer visited Inland in response to a pharmacist's complaint that Dr. Okorie excessively prescribed medications. They reviewed patient records and identified patients who were on a combination of opiates, benzodiazepines, and Carisprodol—known as the "Holy Trinity" in the black market drug trade. They discussed this concern with Dr. Okorie, who said he would implement changes to his practice to comply with the Board's regulations and state law.

On October 13, 2011, Board investigators returned to Inland to conduct a follow-up visit. They again found similar drug combinations in patient records. Still, four days later, the Board

renewed Dr. Okorie's pain certificate, which allowed him to continue prescribing opioids and other pain medications to patients.

On June 30, 2012, Dr. Okorie's certification expired and he applied to renew it. In response, the Board denied his application on the ground that his training in chronic pain management was insufficient. Dr. Okorie resubmitted his application and appeared before the Board's Executive Committee on July 9, 2014. The next day, the Board sent a letter stating Dr. Okorie was unqualified to receive a pain certificate. The Board ordered him to immediately reduce his volume of chronic pain patients and refer them to certified physicians.

Dr. Okorie completed additional training in pain management and again appeared before the Committee on September 3, 2014. Following the meeting, the Committee temporarily granted Dr. Okorie a pain certificate—subject to the approval of the entire Board. After the full Board reviewed the Committee's recommendations, the Board decided that it wanted additional information regarding Dr. Okorie's application and requested that he appear at the next Board meeting on November 13, 2014.

Before the November 13 meeting took place, the Board executed an Administrative Inspection and Search Warrant at Inland to obtain patient records for review. On October 29, 2014, five Board investigators, a Mississippi Bureau of Narcotics agent, a Hattiesburg High Intensity Drug Trafficking Area agent, and two DEA investigators searched Inland and interviewed staff. During the search, an investigator detained Dr. Okorie in his office.

On June 10, 2015, the Board issued its initial Summons and Affidavit, containing 23 counts of alleged violations of Mississippi Code § 73-25-29, which establishes the grounds for the "nonissuance, suspension, revocation or restriction of a license" by the Board, and § 73-25-83, which permits the Board to deny a doctor's authorization to practice medicine if, after a

hearing, he is found unqualified. On October 13, 2015, the Board filed an Amended Summons and Affidavit, reducing the charges to 16 counts of violations by Dr. Okorie.

At a November 12, 2015 hearing, the Board found that Dr. Okorie was guilty of seven of the 16 alleged counts.[1] The Board ordered Dr. Okorie to (1) refrain from taking any new chronic pain and/or addiction medicine patients; (2) within six months, cease managing his existing chronic pain and/or addiction medicine patients; (3) within one year, complete continuing medical education courses in prescribing of controlled substances, proper record keeping, medical ethics, and boundaries; (4) every month for the next year, submit to the Board monthly Prescription Monitoring Program reports; and (5) pay the Board's costs up to $10,000. Twelve days after the hearing, the Board filed and reported a state licensure action against Dr. Okorie with the National Practitioner Data Bank.

Dr. Okorie appealed the Board's decision to the Chancery Court of Hinds County, Mississippi. First, he contended that his due process rights were violated when he was denied a fair and impartial hearing because of the Board's "pre-existing bias and prejudice." Docket No. 27-2 at 4. Second, he argued that the Board's decision was arbitrary and capricious, and against the substantial weight of the evidence. The chancery court rejected each of Dr. Okorie's arguments and affirmed the Board's decision on December 6, 2016. Docket No. 32-2. Dr. Okorie failed to timely appeal this decision to the Mississippi Supreme Court, and on August 16, 2017, the chancery court denied Dr. Okorie's motion to extend the time for filing a notice of appeal.

---

[1] Specifically, the Board found that Dr. Okorie: (1) failed to properly document sufficient written treatment plans containing stated objectives as a measure of successful treatment and diagnostic planning evaluations; (2) failed to conduct appropriate risk/benefit analyses by failing to review his own patient records of previous medical history or records provided by another treating physician, and by failing to document in those patient records the analysis and consultation/referral reports determining the underlying cause of chronic pain for the patients at issue; (3) administered, dispensed, or prescribed narcotic drugs or other addiction-forming drugs or addiction-sustaining liability to a patient otherwise than in the course of legitimate professional practice; and (4) prescribed to a patient controlled substances or other drugs having addiction-forming or addiction-sustaining liability for chronic pain in a non-therapeutic manner.

He then filed this action on July 7, 2017. The Complaint names as defendants Board investigators Jonathon Dalton and Leslie Ross, and the Board members who conducted his November 12, 2015 hearing.[2] Defendants are sued only in their individual capacities.

Dr. Okorie alleges that Defendants (1) violated his Fourteenth Amendment procedural due process rights by denying him sufficient notice and a fair opportunity to be heard; (2) violated his substantive due process rights by depriving him of his liberty interest in pursuing his occupation; and (3) falsely arrested him without probable cause in violation of the Fourth Amendment. Dr. Okorie also asserts state law claims of false imprisonment and defamation. He requests monetary damages, including lost future profits, in an amount in excess of $12.5 million, in addition to costs, expenses, and attorneys' fees.

On August 14, 2017, Dr. Okorie filed this Motion for Preliminary Injunction and Temporary Restraining Order.[3] He seeks equitable relief in the form of removing the sanctions imposed by the Board's November 12, 2015 order, including reinstating his pain management certification. A month later, Defendants moved to dismiss all counts—except Dr. Okorie's false arrest claim against the Board investigators.

## II. Defendants' Motion to Dismiss

Because Defendants have answered the Complaint, the present motion is considered a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c):

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to

---

[2] Those Board members are Virginia M. Crawford, M.D.; Charles D. Miles, M.D.; Rickey L. Chance, D.O.; Claude D. Brunson, M.D.; John C. Clay, M.D.; S. Randall Easterling, M.D.; C. Kenneth Lippincott, M.D.; William S. Mayo, D.O.; J. Ann Rea, M.D.; and H. Vann Craig, M.D.

[3] Though he filed a motion for preliminary injunction, several months passed before Dr. Okorie sought to invoke the procedures set forth in the local rules to have this matter heard expeditiously. *See* L.U.Civ.R. 7(b)(8).

4

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citation omitted).

Defendants discuss several grounds for dismissal.[4] The Court will consider each in turn.

### A. *Rooker-Feldman* Doctrine

Dr. Okorie asks this Court to reverse a final, definitive state court order. But the *Rooker-Feldman* doctrine bars a party who loses in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

The Fifth Circuit has long recognized that "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986); *see Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990). Yet this is exactly what Dr. Okorie seeks. If Dr. Okorie was displeased with the state court's decision, he should have filed a timely appeal in the state system. The Court, therefore, dismisses Dr. Okorie's due process claims.

### B. Absolute Immunity

Defendants contend that the Board members, in their individual capacities, are also entitled to absolute immunity. In response, Dr. Okorie argues that absolute immunity is inappropriate here because the Board members performed a non-judicial function, as "they were blatantly impartial." Docket No. 31 at 8. The Court agrees with Defendants.

---

[4] Defendants assert they are entitled to Eleventh Amendment immunity for claims brought against them in their official capacities. This argument is irrelevant, however, as Dr. Okorie brings all claims against Defendants in their *individual* capacities.

5

In general, "medical/health profession boards and their members [are] absolutely immune from liability when performing adjudicatory actions." *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 67 (5th Cir. 1997) (finding that members of the Mississippi Board of Nursing were entitled to absolute immunity since the board "undisputedly functions as an adjudicatory body"). This case is no different.

In determining whether a function is judicial in nature, the Fifth Circuit considers the following factors:

1. the need to assure that the individual can perform his functions without harassment or intimidation;
2. the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;
3. insulation from political influence;
4. the importance of precedent;
5. the adversary nature of the process; and
6. the correctability of error on appeal.

*Id*. In this case, five of these factors are sufficiently met.

First, the Board is empowered to make difficult and controversial decisions, such as revoking or suspending a medical license, which may negatively affect an individual's life. *O'Neal*, 113 F.3d at 66; Miss. Code Ann. § 73-25-27. "It's important that the members of the [B]oard make these decisions free from the threat of incurring personal liability for every decision they hand down." *O'Neal*, 113 F.3d at 66.

Second, several safeguards, including "the right to counsel, adequate notice of a hearing, and the opportunity present and cross-examine witnesses," reduce the need for private damages. *Id.*; Miss. Code Ann. § 73-25-27.

Third, the nine Board members are appointed by the governor with the advice and consent of the state senate for staggered terms of six years and are, "therefore, to some extent shielded from political influence." Miss. Code Ann. § 73-43-7; *O'Neal*, 113 F.3d at 66.

6

As for the fourth factor, it is unclear whether the Board is bound by precedent. Nevertheless, "one factor is not controlling and is greatly overshadowed by the convincing nature of the five other variables." *O'Neal*, 113 F.3d at 66.

Fifth, the Board's hearing process seems "inherently adversarial," given that the "parties have a right to counsel, are able to present witnesses, and cross-examine adverse witnesses." *Id.*; Miss. Code Ann. § 73-25-27.

Finally, "there is more than adequate opportunity to correct any error made by the [B]oard on appeal," as the license holder has the right to appeal the Board's decision to the chancery court and ultimately to the Mississippi Supreme Court. *Id*.

To this, Dr. Okorie presses that the Board acted outside of the scope of their judicial duties by harassing and intimidating him.

Considering these factors, the Court finds that the Board members, in their individual capacities, were performing adjudicatory functions and are therefore entitled to absolute immunity.

### C.  MTCA Requirements

Dr. Okorie asserts two state-law claims: false imprisonment and defamation.[5] Defendants argue that statutory requirements of the Mississippi Tort Claims Act ("MTCA") bar these claims, and the Court agrees.

The MTCA "requires that anyone making a claim for injury arising under the provisions of the MTCA must file a written notice of the claim with the chief executive officer of the government entity ninety days prior to commencing an action against the entity or employee of the entity." *Gale v. Thomas*, 759 So. 2d 1150, 1158 (Miss. 1999) (citing Miss. Code Ann. § 11-

---

[5] Defendants suggest that Dr. Okorie brought three state-law claims: false arrest, false imprisonment, and defamation, but the Complaint asserts a false arrest violation under the Fourth Amendment only.

7

46-11(1), (2)). Dr. Okorie has failed to demonstrate that he has met the notice of claim requirement.

### III. Dr. Okorie's Motion for Preliminary Injunction and Temporary Restraining Order

Dr. Okorie's petition for injunctive relief asks this Court to reverse a final, definitive state court order, and as discussed above, the district court lacks jurisdiction to do so. *Carbonell v. La. Dept. of Health and Human Res.*, 772 F.2d 185, 188 (5th Cir. 1985). It is unnecessary for the Court to consider all of the prerequisites for injunctive relief since Dr. Okorie lacks a substantial likelihood of success on the merits. *See Walgreen Co. v. Hood*, 275 F.3d 475, 478 (5th Cir. 2001).

### IV. Conclusion

Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order is denied. Defendants' Motion to Dismiss is granted. Plaintiff's Fourth Amendment false arrest claim is carried with the case.

**SO ORDERED**, this the 27th day of February, 2018.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
