# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

IKECHUKWU HYGINUS OKORIE, M.D.                                      PLAINTIFF

V.                                           CAUSE NO. 3:17-CV-537-CWR-FKB

VIRGINIA M. CRAWFORD, M.D., ET AL.                                 DEFENDANTS

## ORDER

Before the Court is Defendants' Motion for Judgment on the Pleadings. For the reasons that follow, the Motion is granted.

## I.     Factual and Procedural History

On February 27, 2018, this Court dismissed all claims except for Plaintiff Dr. Ikechukwu Okorie's Fourth Amendment claim against Investigators Jonathon Dalton and Leslie Ross, in their individual capacities. Defendants asserted the affirmative defense of qualified immunity and requested a Rule 7(a) reply. On March 7, 2018, the Court ordered Dr. Okorie to file such a reply,[1] and directed Defendants to file the instant motion for judgment on the pleadings on the basis of qualified immunity.

Dr. Okorie's complaint and Rule 7(a) reply provide the following facts surrounding his detention. On October 29, 2014, Dalton and Ross, along with other investigators and officers, raided Dr. Okorie's Inland Family Practice Center ("Inland"). Upon entering Inland, Dalton brandished his gun and pushed the doctor into his office. Dalton served Dr. Okorie with an Administrative Inspection and Search Warrant, issued two days earlier by the Circuit Court of

---

[1] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc) ("When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."). "The more specific the defendant's invocation of qualified immunity is, the more specific the plaintiff's Rule 7 reply must be." *Fox v. Miss.*, No. 3:11-CV-377-CWR-MTP, 2012 WL 3154971, at *7 (S.D. Miss. Aug. 2, 2012).

Forrest County, Mississippi. The warrant authorized investigators to obtain Dr. Okorie's patient records related to the purchase, use, administration, and prescribing of controlled substances. In the supporting affidavit, Dalton provided that, based on a data analysis of prescriptions issued by Dr. Okorie from February 1, 2014, to September 15, 2014, Dr. Okorie overprescribed controlled substances to several patients.

After reviewing the warrant, Dr. Okorie attempted to leave his office to discuss it with his staff. Dalton, however, stopped Dr. Okorie, "put his hand on Dr. Okorie's shoulder, pushed him down, and said 'if you don't sit down I will put you down!'" Dalton, with his gun drawn, then escorted Dr. Okorie into the hallway. The doctor instructed his staff to fax the warrant to his lawyers and to print patient records.

While other investigators reviewed the records and interviewed staff, Dalton detained Dr. Okorie in his office. After two hours passed, Dr. Okorie asked to use the restroom. Another investigator replied no. After Dr. Okorie pleaded with Dalton that "he couldn't sit down any more or he was going to urinate himself," Dalton escorted Dr. Okorie to the restroom "with his gun drawn." As Dr. Okorie was using the restroom, "Ms. Ross and the other investigators were all present while the door was open . . . as everyone watched." Dr. Okorie was escorted back to his office and detained for another one to two hours until the investigators completed the search.

**II.   Law**

    **A.   Judgment on the Pleadings**

The legal standard is well-established:

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citation omitted).

B. **Qualified Immunity**

Qualified immunity "protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). In other words, "qualified immunity generally protects all but the plainly incompetent or those who knowingly violate the law." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To determine whether an official is entitled to qualified immunity, the court must determine: "(1) whether an official's conduct violated the plaintiff's constitutional rights, and (2) whether the right violated was clearly established at the time of the violation." *Poole v. City of Shreveport*, 691 F.3d 624, 637 (5th Cir. 2012) (citation omitted). "For a right to be clearly established under the second step of the qualified immunity analysis, the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). While giving even more latitude to law enforcement officers, the Supreme Court explained, in a per curiam decision just weeks ago, officers "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, No. 17-467, slip op. at 5, 584 U.S. ___ (2018). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated

3

the United States Constitution." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

### III. Discussion

The parties' arguments are somewhat jumbled so the Court will do its best to separate the threads and contours of the law.

#### A. Investigator Ross

As an initial matter, Dr. Okorie's Fourth Amendment claim as to Ross must be dismissed because she was not personally involved in his detention. In his pleadings, Dr. Okorie mentions Ross only once—that she and other investigators were present in the hallway while he used the restroom. He has failed to demonstrate how her mere presence implicates her in the alleged constitutional violation. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1000-01 (7th Cir. 2003) (finding that the officer not personally involved in arrest was entitled to summary judgment for Fourth Amendment claim of false arrest).

#### B. Investigator Dalton

Dr. Okorie complains that Dalton falsely arrested him without probable cause. To prevail, Dr. Okorie must establish "(1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010).

Dr. Okorie meets the first element. "Police detention constitutes an arrest, such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand the situation to be a restrain on freedom of the kind that the law typically associates with a formal arrest." *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). Viewing the facts in the light most favorable to Dr. Okorie, a reasonable person in his position would believe that his "freedom was restrained to a degree typically associated with arrest." *Id*. Dr. Okorie's freedom of

4

movement was restricted for three to four hours. And during that time, Dalton prevented Dr. Okorie from speaking with his staff or using the restroom without an escort.

Dr. Okorie fails to satisfy the second element, however. Dalton argues and the Court agrees that he was relieved from the necessity of establishing probable cause. Dalton asserts that the search warrant, issued by the Circuit Court of Forrest County and founded on probable cause, authorized him to temporarily detain Dr. Okorie while other investigators conducted the search.[2]

In *Michigan v. Summers*, the Supreme Court recognized a specific exception to the general principle that every arrest is unreasonable unless supported by probable cause. 452 U.S. 692, 700 (1981). The *Summers* Court found that some limited detentions may be "justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Id*. at 699. To determine whether a seizure falls within this limited exception, a court must balance the intrusiveness of the detention against the law enforcement interests in detaining the occupants. *Id*. at 700-01.

In *Summers*, officers detained a homeowner while they executed a search warrant for drugs in his home. The Supreme Court observed that the detention was only an "incremental intrusion" since there was already a warrant to conduct a more intrusive search of the home. *Id*. at 701. In view of the limited nature of the intrusion, the *Summers* Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id*. at 705. In coming to

---

[2] Dr. Okorie argues that the Court is required to test the validity of this warrant. In support, he cites *Davis v. Strain*, which held that "where the officers charged with false arrest were responsible for securing the warrant, [the court is] required to test the validity of that warrant." 676 F. App'x 285, 287 (5th Cir. 2017). That case is inapplicable, however, because the warrant in *Davis* was an arrest warrant, not a search warrant. But even if required to test the validity of the search warrant in this case, this Court would find that the circuit judge properly issued the warrant based on ample probable cause. Based on Dalton's review of Dr. Okorie's patient records over seven months, Dalton attested that the amount and frequency of Dr. Okorie's prescriptions for controlled substances indicated that he was practicing medicine in a non-therapeutic manner in potential violation of Miss. Code Ann. §§ 73-25-29 and 73-25-83.

5

that conclusion, the Supreme Court identified three law enforcement interests that supported the detention at issue: (1) preventing flight risk and destruction of evidence; (2) minimizing the risk of harm to officers; and (3) expediting the search process. *Id*. at 702-03.

Later, in *Muehler v. Mena*, the Supreme Court clarified that the *Summers* doctrine does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers. 544 U.S. 93, 125 (2005). The *Muehler* Court stated: "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion imposed by the seizure.'" *Id*. at 98 (quoting *Summers*, 452 U.S. at 705 n.19).

The circumstances in this case differ from those in *Summers* in two significant ways.[3] First, the search warrant in this case was an administrative search for evidence, not contraband. The *Summers* Court expressly reserved judgment as to "whether the same result would be justified if the search warrant merely authorized a search for evidence." *Id*. at 705 n. 20. Since then, appellate courts have held that the *Summers* doctrine applies to all searches based on probable cause, not only to searches for contraband. *See, e.g., Leveto v. Lapina*, 258 F.3d 156, 160 (3d Cir. 2001) (evidence of tax-related crimes); *Ganwich v. Knapp*, 319 F.3d 1115, 1120 (9th Cir. 2003) (evidence of consumer fraud); *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006) (evidence of rat infestation).

Second, the warrant was executed at Dr. Okorie's business, not his home. In *Williams v. Kaufman County*, officers executed a search warrant at a nightclub, where they strip-searched

---

[3] In *Heitschmidt v. City of Houston*, the Fifth Circuit explained that *Summers* only holds that "police have limited authority to detain the occupant of a *house* without probable cause while the premises is searched, when the detention is neither prolonged nor unduly intrusive, and when police are executing a validly executed search warrant for *contraband*." 161 F.3d 834, 838 (5th Cir. 1998) (emphasis added).

6

and detained occupants for three hours. 352 F.3d 994, 1011 (5th Cir. 2003). Under the *Summers* balancing test, the Fifth Circuit determined that "[t]he intrusiveness of the detention was much greater than in *Summers*" based on the illegal strip search and the fact that the detention took place in a public establishment. *Id*. at 1009. The *Williams* court noted the "public stigma associated with the detention" as it "lasted three hours in a public venue, not in the obscurity of a residence." *Id*. at 1010. The Fifth Circuit ultimately found that the detention was unlawful because the law enforcement interests did not justify such an intrusion. *Id*. at 1011.

While this case is a closer call than *Summers*, the Court finds that Dr. Okorie's detention was reasonable.

On the one hand, Dr. Okorie's detention might be viewed as more intrusive than in *Summers*. His detention at his place of business arguably increased the stigma imposed by the investigators' search, because it allowed his employees to see how he was being treated by the authorities and prevented him from responding to patient needs. *Leveto*, 258 F.3d at 169.

On the other hand, a business owner would likely prefer to remain at his business during a search. *See Daniel v. Taylor*, 808 F.2d 1401, 1404 (11th Cir. 1986) (suggesting that one could argue that detention at one's business adds minimally and significantly to the stigma of the search). Unlike in *Williams* where the club patrons "had no reason to remain at the Club," Dr. Okorie had an interest in staying at Inland while the search was conducted. *Williams*, 352 F.3d at 1009.

Other aspects of Dr. Okorie's detention were less intrusive. First, the detention did not last longer than necessary to conduct the search. The length of the lawful detention in *Summers* is unclear. *See Summers*, 452 U.S. at 705 n.1. But "a fair reading" of *Summers* "implies that law enforcement officers are entitled to detain occupants of a premises for the whole length of most

7

warranted searches." *Croom v. Balkwill*, 645 F.3d 1240, 1251 (11th Cir. 2011). Dr. Okorie estimates that his detention lasted some three to four hours, and Dalton released him as soon as the inspection and search were over. *Compare Muehler*, 544 U.S. at 98 (ruling that a three-hour detention of an innocent bystander was "plainly permissible"), *with Leveto*, 258 F.3d at 169 (finding that a doctor's eight-hour detention was undoubtedly unreasonable).

Second, a seizure is more intrusive if it "involves moving the suspect to another locale." *Summers*, 452 U.S. at 700 n. 12 (citation omitted); *see also Leveto*, 258 F.3d at 169 (finding a doctor's detention unreasonable where he was forced to drive with IRS agents to his home and back to his office). That is not the case here. With the exception of escorting Dr. Okorie to the restroom, Dalton detained him in the same place, his office, for the entirety of the search.

Third, Dalton did not condition Dr. Okorie's release from detention on his willingness to submit to an interrogation. *See Ganwich v. Knapp*, 319 F.3d 1115, 1120 (9th Cir. 2003) (ruling that it was reasonable for authorities to detain employees during search of business premises, but "it was not at all reasonable to condition the plaintiffs' release on their submission to interrogation").

That brings us to the law enforcement interests supporting Dr. Okorie's detention. First, authorities had an interest in preventing the destruction of incriminating patient records. If Dalton had not detained Dr. Okorie, the doctor could have concealed or destroyed evidence, or could have interfered with the interviews of his employees.

Second, Dr. Okorie's detention facilitated the orderly completion of the search, as investigators relied on him to print patient records for review.

Denying Dr. Okorie's request to use the bathroom unattended was also permissible. This furthered the authorities' interest in facilitating an efficient search. *See Dawson*, 435 F.3d at

8

1069; *Gordon v. Louisville/Jefferson Cty. Metro Gov't*, 486 F. App'x 534, 543 (6th Cir. 2012) (during warranted search of home, "officers kept [the mother] and the children in the kitchen, supervised, and required that they be accompanied to the bathroom—while this might be overly cautious, especially with regard to the children, it is not so unreasonable as to violate clearly established law.").

However, unlike *Summers*, there was no compelling need to detain Dr. Okorie to protect the safety of authorities. Dr. Okorie did not have a violent background or have any ties to a violent organization. Nor did the investigation involve a criminal offense that might give rise to sudden violence. *See Leveto*, 258 F.3d at 171.

In weighing the intrusion of the search against law enforcement interests, the Court finds that Dr. Okorie's detention was lawful. But even if Dr. Okorie's pleadings asserted a valid Fourth Amendment claim, the Court would find that Dalton is entitled to qualified immunity. Courts have held that officers are entitled to qualified immunity on the ground that the breadth of the *Summers* doctrine is not clearly established law. *See, e.g., Williams*, 352 F.3d at 1011 ("Even though *Summers* does not sanction [the officer's] conduct, neither did it establish a clear rule warning defendants that such conduct was illegal."). The scope of *Summers* is especially unclear in cases involving a search warrant for evidence, rather than contraband. While other circuits have spoken on the issue, the Fifth Circuit has yet to address whether the *Summers* doctrine extends to such warrants.

For sure, Dr. Okorie has pointed the Court to no case of precedential value which does not define the law at a high level of generality. It was his burden to show specific law on point and he would meet that burden by citing "a pre-existing or precedential case" from the Fifth Circuit or Supreme Court that placed Dalton on notice that his conduct in question violated the

9

Constitution. *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam). That was his burden. Having failed to cite to such a case "dooms his case here." *Id*. Qualified immunity is appropriate.

**IV.     Conclusion**

Defendants' Motion is granted. A separate Final Judgment shall issue.

**SO ORDERED**, this the 2nd day of May, 2018.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE